UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY PATRICK AUGUST,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-06678-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 13, 14 |

Plaintiff Timothy Patrick August moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found August not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants August's motion in part and denies the Commissioner's motion, and remands this matter for further proceedings.

## I. PROCEDURAL HISTORY

August filed an application for Social Security Disability Insurance (SSDI) benefits on February 19, 2013, which was initially denied on January 22, 2014 and again on reconsideration on February 4, 2014. Administrative Record ("A.R.") 151-154, 61-76, 89-95. On April 23, 2014, August filed a request for a hearing before an Administrative Law Judge ("ALJ"). August appeared at the October 23, 2014 hearing with a non-attorney representative and testified under oath. A.R. 27-42. Although a vocational expert ("VE") was present at the hearing, the ALJ did not question her or take any testimony from her. *See id.*

After the hearing, ALJ David R. Mazzi issued a decision finding August not disabled. A.R. 7-22. The ALJ determined that August has the following severe impairments: chronic fatigue syndrome, degenerative disc disease, cognitive disorder, and affective disorders. A.R. 12.

He found that August retains the residual functional capacity (RFC) "to perform light work, as defined in 20 CFR [§] 404.1567(b), and that he is able to perform simple routine tasks equating to unskilled work." A.R. 15. Applying the Medical-Vocational Guidelines, the ALJ concluded that August is not disabled. A.R. 21.

The Appeals Council denied August's request for review on September 21, 2017. A.R. 1-6. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). August then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him or her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he or she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

### III. RELEVANT MEDICAL EVIDENCE

#### A. State Agency Medical Consultants

On January 15, 2014, state agency medical consultant Timothy Schumacher, Ph.D., reviewed the records and concluded that August is moderately limited in the following areas: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 71-72. Schumacher also assessed "social interaction limitations," including a moderate limitation in the ability to interact appropriately with the general public. A.R. 72. According to Schumacher, August "[r]emains capable of understanding, remembering, and carrying out routine and simple instructions" and "retains the [concentration, persistence, and pace] needed for unskilled work." A.R. 72.

On January 18, 2014, state agency medical consultant Robert Mitgang, M.D., opined that

August is limited to unskilled work, and that based on his ability to lift, carry, stand, walk, sit, push, and pull, he is able to perform "light" work. A.R. 74. Dr. Mitgang also identified addresser, nut sorter (can & preserve), and cuff folder (knitting) as occupations in which there are a significant number of jobs that exist in the national economy that August can perform. A.R. 75.

### B. Soheila Benrazavi, MD, June 2013 and June 2015 Examinations

Soheila Benrazavi, M.D., performed a consultative physical examination in June 2013. A.R. 307-311. Dr. Benrazavi noted that August was "in no acute distress" at the time of the examination and that he complained of fatigue, a history of pericarditis, "[q]uestion seizures," and acute diverticulitis. A.R. 307, 308. Dr. Benrazavi found no lymphadenopathy on examination, which she noted was a common finding in patients with chronic fatigue. A.R. 311. She wrote that she was "not sure if he does have a diagnosis of chronic fatigue in the strict sense of diagnosis." A.R. 311. She also found that August's cervical spine range of motion was diminished, suggesting a degree of degenerative disc disease of the cervical spine, but no evidence of cervical radiculopathy. A.R. 311. Dr. Benrazavi opined that August is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking up to six hours in an eight-hour workday; and sit for six hours in an eight-hour workday "due to a clinical impression of cervical degenerative disc disease in the context of probable chronic fatigue syndrome." A.R. 311. She assessed no other limitations. A.R. 311.

Dr. Benrazavi performed another consultative physical examination in June 2015. A.R. 494-504. She again noted that he was "in no acute distress" and "had the strong smell of cannabis," but that he denied its use while admitting use of "tinctures of cannabis." A.R. 501. Dr. Benrazavi again noted the absence of lymphadenopathy. A.R. 503. Dr. Benrazavi noted that she found "inconsistencies" in August's history and that his effort was "suboptimal." A.R. 500, 503. She wrote that August told her that "he felt that he had the symptoms of Systemic Exertion Intolerance Disease, SEID," but that "in order to diagnose this condition, the history must be reliable as so much of the diagnosis is based on the history alone," and that she could not confirm that diagnosis because she found him "a questionable historian." A.R. 503. She confirmed her June 2013 findings of reduced range of motion in the cervical spine, which could be consistent

4

with a degree of cervical degenerative disc disease. A.R. 503.

Dr. Benrazavi opined that August is able to occasionally lift and carry up to 20 pounds frequently and up to 50 pounds occasionally. A.R. 494. According to Dr. Benrazavi, he is also able to sit, stand, and walk for up to six hours in an eight-hour workday; ambulate without using a cane; frequently reach, handle, finger, feel, and push/pull with both hands; frequently operate foot controls; and frequently climb, balance, stoop, kneel, crouch, and crawl. A.R. 495-497.

### C. Sheila Bastien, Ph.D., February 2013 Examination

Sheila Bastien, Ph.D., conducted a neuropsychological evaluation on February 5, 2013, and completed a 13-page report on April 30, 2013. A.R. 313-325. Dr. Bastien reviewed August's diary and CV. *See* A.R. 314, 326-333. She also performed a diagnostic interview and administered testing. *See* A.R. 315. August received a full scale IQ score of 113, which is in the high average range of intellectual functioning, but Dr. Bastien wrote that this was "unexpectedly low" given August's background, educational experience, and work history. A.R. 316-317. August's scores on the Verbal Comprehension Index, Perceptual Reasoning index, and Working Memory index were in the "very superior" range, "high average" range, and "average" range, respectively. However, Dr. Bastien noted that August's Processing Speed was in the "low average" range, which was significant as it was three full standard deviations from his highest index score. A.R. 317. She concluded that his scores indicated "deterioration in intellectual functioning." A.R. 318. August showed "significant impairments" on certain motor tests, consistent with other chronic fatigue patients. A.R. 323; *see* A.R. 320-321.

Dr. Bastien opined that August is impaired in his ability to "recall contextual verbal material" and "spatial configurations correctly," and that these impairments would "seriously impede his ability to function normally or efficiently in everyday li[f]e." A.R. 323-324. Dr. Bastien diagnosed August with cognitive disorder, secondary to chronic fatigue and immune dysfunction syndrome ("CFIDS"). A.R. 324.

According to Dr. Bastien, August is "severely impaired, and cannot handle the cognitive or physical demands of work in any occupation on a consistent and predictable basis." She continued, "[August] should be considered completely disabled from any work for which he has

5

reasonable training or experience, now and for the foreseeable future." A.R. 324. Specifically, Dr. Bastien concluded that August is markedly restricted in daily activities; has marked difficulties in maintaining social functioning; has deficiencies of concentration and problems in persistence and pace; and is likely to have "repeated episodes of deterioration and decompensation in work settings." A.R. 325.

### D. Marion Zipperle, Ph.D., October 2014 Examination

Marion Zipperle, Ph.D., conducted a psychological examination on October 4, 2014. A.R. 465-474. Dr. Zipperle reviewed August's records, including Dr. Bastien's report. A.R. 465. She administered testing and concluded that August was not malingering. He scored "high" on a depression inventory and another test reveals he suffers from anxiety related to his medical problems. A.R. 465. Dr. Zipperle also interviewed August, and noted that he "had problems in the interview to cope with the time it took, the hours were hard on his concentration, and had problems being persistent, and pacing." A.R. 467. She noted that he "became confused, rambled, and had illogical thoughts etc." A.R. 467. August "was logical at the start and could tell a coherent story, but had problems at time [sic] with rambling, staying on track, on occasion had irrational thoughts, could not find words for what he wanted to say etc." A.R. 467. August had "problems with numbers" and became anxious with basic math. A.R. 468. Dr. Zipperle diagnosed August with cognitive impairment NOS, major depression, and general anxiety. A.R. 468.

Dr. Zipperle opined that August could not return to work, listing several reasons:

> Mr. August is impaired to perform simple and repetitive tasks. This can be seen in the fact that he has problems with activities of daily living. He is impaired to cope with detailed and complex tasks. He is markedly impaired to accept instructions [from] supervisors, or interact with coworkers/public in a reasonable manner, due to issues with anger, low frustration tolerance and problems dealing [with] negative feedback.
>
> . . .
>
> Mr. August is markedly impaired to cope with stress encountered in the workplace. He has problems coping with change, and does not adapt well to new situations. He has problems with tuning out external stimuli, has issues coping rationally with issues arising at work.

6

A.R. 469.

Dr. Zipperle completed a mental residual functional capacity questionnaire in which she noted that August's prognosis was poor. A.R. 470-474. She concluded that August is "unable to meet competitive standards" in several areas, including the ability to maintain attention for a two hour segment, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 472. She also found that August is "seriously limited, but not precluded," from understanding and remembering detailed instructions and carrying out detailed instructions. A.R. 473.

### E. Melody Samuelson, Psy.D., February 2015 Examination

Melody Samuelson, Psy.D., performed a consultative psychological examination on February 8, 2015, following the hearing. A.R. 476-483. August's chief complaints were pain, fatigue, and poor memory. A.R. 477. Dr. Samuelson wrote that August is able to take care of dressing, bathing, and personal hygiene; drive a car; pay bills and manage money appropriately; and go out alone, with fair relationships with family and friends. A.R. 479. August reported "difficulty completing household tasks that require endurance" and "difficulty making complex decisions." A.R. 479. According to Dr. Samuelson, August "cannot sustain attention and is easily distractible." A.R. 479.

August was well groomed and able to volunteer information with prompting. He appeared to put forth his best effort and was cooperative, and there was no evidence of feigning or exaggerating symptoms. A.R. 479. Dr. Samuelson noted "psychomotor retardation as [August's] range of motion was extremely slow in the chair." A.R. 479. His thought processes were coherent and organized, with no tangentiality or loosening of associations. A.R. 480. His mood was euthymic and he had a flat affect. A.R. 480. August was alert and oriented to time, place, and purpose. A.R. 480. Dr. Samuelson noted that August's fund of knowledge was "much lower" than would be expected, given his education, but that he would perform simple calculations. A.R. 481. His insight and judgment were intact. A.R. 481. Dr. Samuelson diagnosed rule out

dementia, cognitive disorder NOS, and generalized anxiety disorder. A.R. 481.

Dr. Samuelson opined that August would have mild difficulty performing simple and repetitive tasks; working with the public; working with supervisors and coworkers; associate with day-to-day work activity, including attendance and safety; and accept instruction from supervisors. A.R. 482. She found that he is moderately impaired in his ability to perform complex and detailed tasks due to his decline in cognitive functioning; to maintain attention, concentration, persistence and pace; and to perform work activities without special or additional supervision. According to Dr. Samuelson, August is mildly to moderately impaired in his ability to maintain regular attendance in the workplace and perform activities on a consistent basis based on his cognitive functioning and anxiety. A.R. 482.

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

8

## V. ISSUES PRESENTED

In his opinion, the ALJ gave "significant weight" to Dr. Samuelson's opinion. A.R. 18. August argues that the ALJ erred by ignoring portions of Dr. Samuelson's opinion and by failing to include all of the limitations assessed by Dr. Samuelson in his formulation of August's RFC. He also argues that the ALJ erred in finding that August could perform the jobs of addresser, nut sorter, and cuff folder, as there is no evidence that these jobs exist in significant numbers in the economy.

The Commissioner cross moves to affirm, arguing that the ALJ's decision is supported by substantial evidence and is free of legal error.

## VI. DISCUSSION

As discussed above, Dr. Samuelson opined that August is mildly to moderately impaired in his ability to maintain regular attendance in the workplace and perform activities on a consistent basis based on his cognitive functioning and anxiety. A.R. 482. She also found that August is moderately impaired in his ability to maintain attention, concentration, persistence and pace; and to perform work activities without special or additional supervision. A.R. 482. The ALJ discussed the medical evidence and stated that he gave "significant weight" to Dr. Samuelson's opinion, noting that her "findings support the impairments of cognitive disorder and affective disorders with the limitation to simple, unskilled work." A.R. 18.

August argues that the ALJ erred with respect to Dr. Samuelson's opinions in two ways: first, he argues that the ALJ failed to address certain limitations assessed by Dr. Samuelson. Second, August argues that even though the ALJ acknowledged and adopted other limitations assessed by Dr. Samuelson, he failed to include them in his determination of August's RFC.[2]

### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who

---

[2] August also appears to argue that the ALJ erred in rejecting the opinions of Dr. Bastien and Zipperle in favor of a non-examining physician that he does not identify. *See* Pl.'s Mot. 12. However, he does not explain this argument in any detail, and does not address the sufficiency of the reasons offered by the ALJ to discount those opinions. The court declines to consider this unexplained, unbriefed argument.

9

treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion

given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. The ALJ's Failure to Address Portions of Dr. Samuelson's Opinion

The ALJ discussed the limitations assessed by Dr. Samuelson, and specifically noted her opinion that August is mildly to moderately limited in "maintaining regular attendance and . . . concentration, attention, persistence and pace." A.R. 18. However, he did not acknowledge or discuss Dr. Samuelson's opinion that August is also moderately impaired in his ability to perform work activities without special or additional supervision, and is mildly to moderately impaired in his ability to "perform activities on a consistent basis . . . based on his cognitive functioning and anxiety." A.R. 482. Ignoring portions of a physician's opinion is considered an implicit rejection of those opinions and failure to offer reasons for doing so is legal error. *Smolen*, 80 F.3d at 1286 ("By disregarding those opinions and making contrary findings, [the ALJ] effectively rejected them. His failure to offer reasons for doing so was legal error.").

While an ALJ is not required to adopt all of an examining physician's assessment, *Magallanes*, 881 F.2d at 753, an ALJ is required to explain the reasons for rejecting those portions of an examining physician's assessment that the ALJ chooses not to adopt. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). Here, the ALJ's decision failed to address portions of Dr. Samuelson's opinion. This constitutes legal error, for "[t]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). Given the requirements governing the treatment of an examining physician's opinions, the ALJ should have made a determination about whether Dr. Samuelson's opinions regarding August's impaired ability to perform activities on a consistent basis and to perform work activities without special supervision were contradicted or supported by any other doctor. His failure to do so was legal error, as was his failure to explain why he rejected those opinions.

11

### 3. August's Limitations in Concentration, Persistence, or Pace

August also argues that the ALJ erred with respect to Dr. Samuelson's opinion that August is moderately impaired in maintaining attention, concentration, persistence, and pace. *See* A.R. 482. The ALJ expressly accepted this portion of Dr. Samuelson's opinion. A.R. 18. *See also* A.R. 14 (finding that August has mild to moderate difficulties in concentration, persistence, and pace). However, the ALJ concluded that this limitation, along with August's mild to moderate limitations in activities of daily living and social functioning, did not preclude August from performing work involving simple, routine tasks:

> The finding of even moderate limitations in general is not intended to constitute a finding of an inability to sustain at least simple, routine tasks consistent with unskilled jobs requiring a specific vocational preparation (SVP) of 2 or the limited interaction required of most such jobs within the residual functional capacity in this case.

A.R. 14. Instead of eliciting and relying on the testimony of the VE, the ALJ applied the Medical-Vocational Guidelines and concluded that Medical-Vocational Rule 202.14 compelled a finding that August is not disabled. The ALJ also determined that even if August were further limited to jobs requiring "limited public contact," there would still be significant numbers of jobs in the economy that he could perform, as identified by the state agency medical consultant: addresser, nut sorter (can & preserve), and cuff folder (knitting). A.R. 21 (citing A.R. 75).

August argues that an RFC limiting him to "simple routine tasks equating to unskilled work" does not adequately capture his moderate limitations in concentration, persistence, and pace.[3] Pl.'s Mot. 13. The Commissioner argues the opposite, i.e., that a limitation to "simple routine tasks equating to unskilled work" adequately accounts for moderate limitations in concentration, persistence, and pace. Def.'s Mot. 10.

The parties' arguments oversimplify the issue, for they both ignore other aspects of Dr. Samuelson's opinions. As discussed above, in addition to her opinion about August's impairment

---

[3] August's arguments on this point are not models of clarity. Confusingly, he first argues that "[n]one of the hypothetical's [sic] to the vocational expert included the moderate limitation in concentration, persistence and pace," even though the ALJ did not question the VE at the hearing (and thus did not pose any hypotheticals). Pl.'s Mot. 14; *see also* A.R. 27-42. He also argues that his impairment in concentration, persistence, and pace is "not subsumed in the limitation to simple tasks and no high stress work," Pl.'s Mot. 13, but the ALJ did not limit August to "no high stress work." *See* A.R. 15.

12

in concentration, persistence, and pace, Dr. Samuelson assessed a number of other moderate impairments. These include a mild to moderate impairment in August's ability to "perform activities on a consistent basis . . . based on his cognitive functioning and anxiety," and a moderate impairment in his ability to perform work activities without special or additional supervision. *See* A.R. 482. As discussed above, the ALJ did not mention or distinguish these two limitations, even though he gave Dr. Samuelson's entire opinion significant weight. The additional impairments assessed by Dr. Samuelson, such as the ability to work without special or additional supervision, could impact the ALJ's RFC assessment by themselves or in connection with the impairments that were expressly acknowledged by the ALJ.

The cases upon which the parties rely are distinguishable. In *Brink v. Commissioner of the Social Security Administration*, 343 Fed. Appx. 211, 212 (9th Cir. 2009), cited by August, the Ninth Circuit found that the limitation to "simple, repetitive work" failed to encompass the ALJ's finding that the claimant had moderate limitations in concentration, persistence, or pace. The court noted that "repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed" which was not included in the hypothetical the ALJ posed to the VE. *Id. See also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013) (holding that the ALJ erred by not including a moderate limitation in maintaining concentration, persistence, or pace in the hypothetical posed to vocational expert; noting "the work described by the vocational expert may still require the speed and concentration [Plaintiff] lacks."). Thus, *Brink* and *Lubin* both dealt with situations where the ALJ failed to include relevant information in hypotheticals posed to a VE. By contrast, the ALJ in this case did not elicit any testimony from the VE.

The Commissioner cites *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th Cir. 2008), in which the medical evidence included an opinion assessing a moderate limitation in pace. *Id*. at 1173. The record included an additional opinion that despite the claimant's "slow pace, both in thinking & actions" and moderate limitations "in other mental areas," the claimant "retained the ability to 'carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading.'" *Id.* The Ninth Circuit concluded that the ALJ did not commit

13

error in translating the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to [the ALJ]—[the physician's] recommended restriction to 'simple tasks.'" *Id.* at 1174. The court held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. *Stubbs-Danielson* is distinguishable for several reasons. In that case, an evaluating physician found that despite the claimant's impaired ability to "perform at a consistent pace," she was able to "maintain attention and concentration for extended periods." 539 F.3d at 1174. Additionally, the physician concluded that the claimant could "sustain an ordinary routine without special supervision." *Id*. Finally, unlike this case, the ALJ in *Stubbs-Danielson* specifically discussed each limitation assessed by the physicians. *Id*. at 1173-74.

In determining a claimant's RFC at step four of the sequential analysis, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin*., 574 F.3d 685, 690 (9th Cir. 2009). Here, the ALJ's RFC failed to account for all of the limitations assessed by Dr. Samuelson. The court therefore remands this case for the ALJ to consider August's RFC in light of all of the restrictions identified by Dr. Samuelson, including August's impaired ability to perform work activities without special or additional supervision, and mild to moderate impairment in his ability to "perform activities on a consistent basis . . . based on his cognitive functioning and anxiety."

Because the ALJ's reassessment of August's RFC may impact his finding at step five that August can perform other work that exists in significant numbers in the national economy, the court does not reach August's argument that there is no evidence that the jobs of addresser, nut sorter, and cuff folder exist in significant numbers and that the job of addresser is obsolete. *See* Pl.'s Mot. 15-16.

## VII. CONCLUSION

For the foregoing reasons, August's motion for summary judgment is granted in part, as the court did not reach all of the arguments in his motion. Defendant's motion for summary judgment is denied. This matter is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: February 28, 2019



Donna M. Ryu
United States Magistrate Judge